USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 10, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                             :

UNITED STATES OF AMERICA           :
                             :
                             :
         -v.-                 :
                             :        15-cr-616 (KBF)
DARCY WEDD,                 :
ERDOLO EROMO,           :        <u>OPINION & ORDER</u>
CHRISTOPHER GOFF, and,     :
YOUNG JASON LEE,        :
                             :
             Defendants.       :
                             :

------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

        On May 26, 2015, the Government filed a 30-page sealed criminal complaint (the "Complaint"), charging six individuals in two counts.  (Compl., ECF No. 1.)  On September 9, 2015, Darcy Wedd, Erdolo Eromo and four of the six individuals named in the aforementioned Complaint were charged in a sealed indictment (the "Indictment").  (Indictment, ECF No. 51.)  The Indictment was unsealed on September 14, 2015.  (ECF No. 52.)  The Indictment charged Wedd, Eromo and their co-defendants with (1) conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 349 (Count One), (2) wire fraud, in violation of 18 U.S.C. §§ 1343 & 2 (Count Two), and (3) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three).  Trial on the Indictment is scheduled to commence on October 5, 2016.

        By order dated December 16, 2015, this Court ordered the parties to file all initial motions (as described on the record at the December 11, 2015 conference) not

later than February 1, 2016.  (ECF No. 90.)  Pending before the Court is the only motion brought in response to the Court's December 16 Order, which is Wedd's motion for an order directing the Government to furnish a bill of particulars and provide Brady material, and for such other and further relief that this Court deems just and proper.  (ECF No. 100.)  On February 18, 2016, Eromo moved to join in Wedd's motion and requested that the Government furnish a bill of particulars as to two additional categories of information.  (ECF No. 103.)

For the reasons set forth below, Wedd's motion is DENIED.  Eromo's motion for joinder is DENIED as moot in light of the Court's denial of Wedd's motion.

I.     BACKGROUND

The Indictment alleges that the defendants engaged in a multi-million dollar scheme to defraud mobile phone customers by placing unauthorized charges for premium text messaging services on the customers' phone bills through a practice known as "auto-subscribing."  (Indictment ¶ 1.)  The Indictment alleges that the defendants carried out this scheme by causing unsolicited text messages to be sent to mobile phone users that offered subscriptions to receive recurring text messages containing various types of content.  (Indictment ¶ 2.)  The Indictment further alleges that while consumers who received these text messages typically ignored or deleted them, they were billed or "auto-subscribed" for these premium text messaging services—at a rate of $9.99 per month—without their consent. (Indictment ¶ 2.)  The Indictment alleges that these consumers were billed each month unless and until they noticed the charges and took action to unsubscribe,

and sometimes continued to be billed when their attempts to dispute the charges and obtain refunds were unsuccessful.  (Indictment ¶ 2.)

After providing an overview of the alleged scheme, the Indictment explains the industry for premium text messaging services (Indictment ¶¶ 5-11) and the roles of the charged defendants (Indictment ¶¶ 12-14).  It then goes on to detail the chronology of events leading to the creation of the scheme (including approximate dates) (Indictment ¶¶ 15-22) and the defendants' efforts to conceal the scheme (Indictment ¶¶ 23-24).  The Indictment details specific acts carried out by each defendant, including Wedd and Eromo, in furtherance of the charged conspiracy. (Indictment ¶¶ 19, 22-24.)

In its brief filed in opposition to the pending motions, the Government states that it produced the vast majority of its Rule 16 discovery to the defendants on November 6, 2015, and produced a handful of additional documents on December 11, 2015.  (Gov't's Opp. Br. at 5, ECF No. 104.)  According to the Government, the production contained a large amount of data, including: "the returns from numerous email search warrants, a large volume of subpoenaed documents (bank records, investment account records, credit card records, phone records, etc.), and emails from the Tatto Inc. email server that had been obtained by the Federal Trade Commission ('FTC') as part of their civil suit against Tatto."  (Id.; see Gov't's Opp. Br., Ex. C, ECF No. 104-3.)  The Government also provided an index of the discovery materials along with the production.  (See Gov't's Opp. Br., Ex. D, ECF No. 104-4.)  The Government further states that the materials it turned over

3

included all of the emails and bank records specifically referenced in the Complaint and that provide the basis for the allegations in the Indictment.  (Gov't Opp. Br. at 5.)

With respect to the disclosure of <u>Brady</u> material, in its November 6, 2015 letter accompanying its production of Rule 16 discovery, the Government recognized its continuing obligations under <u>Brady v. Maryland</u>, 383 U.S. 83 (1963), and its progeny, and represented that it was unaware of any such material regarding the defendants.  (Gov't Opp. Br., Ex. C.)  Subsequently, in letters dated December 11, 2015 and December 28, 2015, the Government disclosed to the defendants certain statements made by Melanie Camp (Darcy Wedd's ex-wife) and Andrew Bachman in interviews with the Government.  (Gov't Opp. Br., Exs. E, F, ECF Nos. 104-5, 104-6.)  The letters indicated that the Government was unaware of any <u>Brady</u> material regarding the defendants, but stated that it was disclosing the information as to Camp's and Bachman's statements in an abundance of caution.  (<u>Id.</u>)  The Government's December 28 letter further stated that it did not believe that Camp's statements constituted <u>Brady</u> material because they merely reflected what Wedd himself told Camp, thus indicating that Wedd was presumably already aware of the content of those statements.  (Gov't Opp. Br., Ex. F.)

II.    DISCUSSION

A.    <u>Bill of Particulars</u>

Wedd and Eromo move for an order requiring the Government to furnish a bill of particulars that identifies, <u>inter alia</u>, the dates and locations of conversations and meetings where the defendants engaged in unlawful conduct in furtherance of

the conspiracy, the dates, times and form of payments made in furtherance of the conspiracy, a list of mailings and wire, radio or television communications referenced in the Indictment, and a list of specific bank transfers referenced in the Indictment.  (Wedd's Opening Br. at 2-3, ECF No. 102; Eromo's Mot. For Joinder at 2, ECF No. 103.)  Wedd and Eromo also ask the Court to direct the Government to identify all documents provided to the defense in discovery that corresponds to each of defendants' requests.

Although Wedd acknowledges that the Indictment "is a 'speaking' Indictment that provides a great deal of detail concerning the nature of the crimes charged," he argues that the Indictment does not adequately inform him of the "basis for the allegation that he was a member of the conspiracies charged or that he engaged in the substantive crime referenced in the Indictment."  (Wedd's Opening Br. at 4-5; see also Defs.' Reply Br. at 1, ECF No. 107.)  Specifically, Wedd asserts that the Indictment does not adequately describe the nature of the false representations made by him (or any other participants), fails to name the alleged shell companies or outline the payments that Wedd allegedly received, and does not provide any information regarding the financial transactions underlying the fraud scheme. (Wedd's Opening Br. at 6.)  Wedd and Eromo also argue that the volume of material provided in discovery makes it exceedingly difficult for counsel to determine the basis for the charges against them, which defendants argue will prevent them from adequately preparing for trial.  (Wedd's Opening Br. at 6; Defs.' Reply Br. at 3-4.) In their reply brief, defendants argue that the requested particulars "ask for no

more than is necessary to avoid surprise, prepare a defense to the charges, and enable the defense to make appropriate and efficient use of the enormous volume of discovery provided by the Government."  (Defs.' Reply Br. at 3.)  As explained below, the Court rejects defendants' arguments, and concludes that directing the Government to furnish the requested particulars is not warranted in this case.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that a court may direct the Government to file a bill of particulars.  Fed. R. Crim. P. 7(f). However, a bill of particulars is required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990)).  "Acquisition of evidentiary detail is not the function of a bill of particulars."  Torres, 901 F.2d at 234. "[D]emands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." United States v. Trippe, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001).

A bill of particulars is also unnecessary when the Government has produced materials in discovery concerning the witnesses and other evidence.  See Walsh, 194 F.3d at 47 ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means."); see also United States v. Love, 859 F. Supp. 725, 738 (S.D.N.Y. 1994) ("The crucial question is whether the information sought is necessary, not whether it is helpful."). In Torres, the Second Circuit affirmed the district court's denial of a bill of

particulars in part because the defendants were provided with considerable evidentiary detail outside of the indictment.  901 F.2d at 233-34; see also United States v. Panza, 750 F.2d 1141, 1148 (2d Cir. 1984).  Thus, in determining whether to order a bill of particulars, a court must examine the totality of the information available to defendant, both through the indictment and through pre-trial discovery.  United States v. Bin Laden, 92 F. Supp. 2d 225, 233 (S.D.N.Y. 2000).  The purpose of the bill of particulars is to avoid prejudicial surprise at trial and give defendant sufficient information to meet the charges against him.  Id. (citing Torres, 901 F.2d at 234).

In short, no provision of the Federal Rules of Criminal Procedure provide for the sort of detailed evidence supporting the charges that Wedd and Eromo seek here.  The purpose of a bill of particulars is not to provide the defense with a preview of all of the evidence that the Government intends to use at trial.  The function, rather, is to ensure that the defendants understand the nature of the charges against them so that they may fairly meet those charges.  Here, as Wedd acknowledges, the Indictment is a "speaking" Indictment that provides a significant amount of detail as to the Government's theory of the case and the nature of the proof that will underlie the charges at trial.  The allegations in the Indictment include a chronology of the formation of the scheme and the Indictment identifies the approximate dates of key events that were part of the scheme.  Moreover, as the Government observes in its opposition brief, the Complaint that preceded the Indictment also provides a substantial amount of additional information, including

7

by identifying numerous emails sent on specified dates between the co-conspirators that relate to aspects of the execution of the alleged fraudulent scheme. (E.g., Compl. ¶¶ 24, 26, 28-32.)

Based on the foregoing, there can be no doubt that the Indictment is specific enough to advise Wedd and Eromo of the acts of which they are accused, especially in light of the additional allegations in the Complaint and the fact that the Government has also produced all of the communications referenced in the Indictment in discovery. Courts routinely reject requests for bills of particulars under these circumstances. E.g., United States v. Reinhold, 994 F. Supp. 194, 201 (S.D.N.Y. 1998); United States v. Conesa, 899 F. Supp. 172, 176 (S.D.N.Y. 1995). Although the Court recognizes the burdens on defense counsel imposed by the volume of discovery in this case, defendants are not entitled to a roadmap of the Government's proof to facilitate their review of that discovery. The cases in which courts granted motions for bills of particulars that defendants cite are all inapposite from the circumstances presented here.

Wedd primarily cites United States v. Bortnovsky, 820 F.2d 572 (2d Cir. 1987), and United States v. Nachamie, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), as instances in which courts ordered bills of particulars, arguing that the circumstances here are analogous to those cases. Those cases are, however, readily distinguishable. The indictments in Bortnovsky and Nachamie alleged that the defendants filed false claims with the Government, but didn't identify which of the numerous claims submitted by the defendants the Government alleged were false.

8

See Bortnovsky, 820 F.2d at 574-75; Nachamie, 91 F. Supp. 2d at 571-72.  Whereas

in Bortnovsky and Nachamie the indictments left the defendants guessing as to

which of their numerous statements to the Government were even alleged to be

false, and the statements at issue constituted the heart of the alleged fraudulent

schemes, here the underlying fraud is defendants' auto-subscription scheme, which

is adequately described in the Indictment to prevent prejudicial surprise.  Unlike

Bortnovsky and Nachamie, based on the details provided in the Indictment, the

Complaint and the discovery that the Government has turned over, Wedd and

Eromo need not guess about what makes their alleged conduct criminal.  To the

extent that Wedd and Eromo argue that this "speaking" Indictment lacks adequate

information regarding their particular roles in the alleged fraud and conspiracy,

they ask for more than what the Federal Rules of Criminal Procedure provide.

     Wedd also cites United States v. Bin Laden, another case in which the court

granted the defendants' motion for a bill of particulars.  92 F. Supp. 2d at 227.  The

facts and circumstances at issue in Bin Laden were also materially different from

this case.  In Bin Laden, the indictment charged 15 named defendants with 267

discrete criminal offenses, charged certain defendants with 229 counts of murder,

covered a period of nearly ten years, and alleged 144 overt acts in various countries

that covered an unusually vast geographical scope.  Id. at 227-28.  Another key

factor in the district court's decision in that case was that many of the alleged co-

conspirators used several aliases and/or code names, which significantly magnified

defense counsel's burden.  Id. at 241.  This recitation of the circumstances in Bin

9

<u>Laden</u> shows that the conspiracy at issue in the Indictment here does not nearly have the unusual breadth and scope that was central to the Court's decision in that case.  Moreover, the concern regarding the challenges posed by code names and aliases is not present in this case.

A bill of particulars is wholly unnecessary to avoid prejudicially surprising Wedd and Eromo at trial.  The Court therefore rejects this request.

B.   <u>Brady Obligations</u>

Wedd and Eromo also move for an order directing the Government to produce material pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), including, <u>inter alia</u>, the names of witnesses who did not implicate Wedd or Eromo in one or more of the counts alleged in the Indictment and copies of all notes prepared by law enforcement agents relating to the interviews of such witnesses.  (Wedd's Opening Br. at 3.)  Wedd and Eromo also request that the Government be directed to turn over copies of all notes taken by law enforcement agents in any interview of Melanie Camp.  (Wedd's Opening Br. at 3.)

"<u>Brady</u> requires the prosecution to disclose exculpatory information to a criminal defendant."  <u>United States v. Mostafa</u>, 992 F. Supp. 2d 335, 338 (S.D.N.Y. 2014) (citing <u>Brady</u>, 373 U.S. at 87).  <u>Brady</u> did not, however, create a general constitutional right to discovery in a criminal case.  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977).

The Government has stated that it is aware of its <u>Brady</u> obligations and has represented that it is not aware of any exculpatory information provided by any witnesses prior to the filing of the Complaint.  (Gov't Opp. Br. at 12.)  The

Government further represents that to the extent Melanie Camp yielded any information subject to <u>Brady</u> disclosure in interviews with law enforcement personnel, it has already disclosed that information in its letters dated December 11, 2015 and December 28, 2015.  (Gov't Opp. Br. at 12.)  The Government further disputes defendants' argument that Camp's statements to law enforcement even constitute <u>Brady</u> material in the first instance, as they merely reflect what Wedd himself told Camp, information as to which Wedd is presumably already aware.

The Court finds no basis to believe that the Government has failed to meet its <u>Brady</u> obligations or will not continue to meet them.  The fact that Wedd and Eromo were not named in the Complaint does not indicate in any way that witnesses interviewed prior to the filing of that document provided exculpatory evidence as to these defendants.  As to the Government's interview of Melanie Camp, the defendants argue in their reply brief that the Court should order disclosure of all relevant notes and memoranda.  (Defs.' Reply Br. at 6.)  However, the Government is under no obligation to produce the entire memo of Camp's interview with law enforcement personnel; the Government satisfies its obligations so long as its disclosures are "sufficiently specific and complete to be useful."  <u>United States v. Rodriguez</u>, 496 F.3d 221, 226 (2d Cir. 2007).  Having reviewed the Government's December 11, 2015 and December 28, 2015 letters (<u>see</u> Gov't Opp. Br., Exs. E, F), the Court concludes that the Government has provided sufficient information to meet its obligation here.  The Court therefore denies Wedd's and Eromo's requests for <u>Brady</u> material.

11

III.    CONCLUSION

For the foregoing reasons, Wedd's motion for a bill of particulars and disclosure of <u>Brady</u> material is DENIED.  As a result, Eromo's motion to join in Wedd's motion is DENIED as moot.

The Clerk of Court is directed to close the motions at ECF No. 100 and 103.

SO ORDERED.

Dated:      New York, New York
            March 10, 2016

                                    _____
                                    KATHERINE B. FORREST
                                    United States District Judge