UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                     :

UNITED STATES OF AMERICA        :

                                      :   S2 15 Cr. 616 (KBF)

            - v. -                  :

                                      :

DARCY WEDD, et al.,              :

                                      :

                  Defendants.    :

                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## **GOVERNMENT'S MOTIONS *IN LIMINE***

 

PREET BHARARA
United States Attorney for the Southern District
of New York
One St. Andrew's Plaza
New York, New York 10007

Sarah Paul
Richard Cooper
Assistant United States Attorneys
    -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
    UNITED STATES OF AMERICA

            - v. -

    DARCY WEDD, et al.,

            Defendants.

S2 15 Cr. 616 (KBF)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## **PRELIMINARY STATEMENT**

Darcy Wedd ("Wedd"), Fraser Thompson ("Thompson"), Christopher Goff ("Goff"), and Yong Jason Lee ("Lee") (collectively, the "defendants") are charged in a three-count superseding indictment alleging that, from in or about 2011, up to and including in or about 2013, they participated in a conspiracy to defraud wireless cellular telephone customers by charging them for Premium SMS ("PSMS") services without the customers' knowledge or authorization, and then laundered the proceeds of that fraud. The defendants are scheduled to proceed to trial on April 3, 2017.

In advance of trial, the Government respectfully moves *in limine* to preclude the defendants from (a) introducing testimony that they were engaged in otherwise lawful activity during the conspiracy period; and (b) offering opinion testimony from third parties that money transferred into bank accounts controlled by the defendants did or did not constitute proceeds of auto-subscriptions.

## **BACKGROUND**

The Government expects that the evidence at trial will show that the defendants and other co-conspirators engaged in a scheme to personally profit from a particular type of fraud against

1

mobile phone customers, known to the members of the conspiracy as auto-subscription. Wedd, Thompson, and Goff were executives at Mobile Messenger, a mobile aggregator company that operated as, among other things, a middleman between "digital content providers" who provided PSMS services and mobile telephone carriers such as AT&T and Verizon Wireless. Lee was an employee at Tatto, a digital content provider that worked with Mobile Messenger.

Wedd, Goff, and others at Mobile Messenger engaged in auto-subscribing with Lee and others at Tatto, where mobile phone customers were auto-subscribed to PSMS offers from Tatto, using Mobile Messenger's connections with mobile telephone carriers. Executives at Tatto received proceeds from these auto-subscriptions, and then distributed those proceeds to Lee at Tatto, Wedd and Goff at Mobile Messenger, and others involved in the scheme. The funds were transferred to the co-conspirators in a number of ways, including in cash and by wire transfer to shell companies set up and controlled by members of the conspiracy.

Wedd, Thompson, and others at Mobile Messenger engaged in auto-subscriptions with Eugeni Tsvetnenko, a/k/a "Zhenya" ("Zhenya"), a co-defendant who at that relevant time controlled a number of content providers located around the world (the "Zhenya entities"). Mobile phone customers were auto-subscribed to PSMS offers from certain of the Zhenya entities, using Mobile Messenger's connections with mobile telephone carriers. Certain of the Zhenya entities received proceeds from these auto-subscriptions, and Zhenya then directed the distribution of those proceeds to a shell corporation set up by a co-conspirator of Wedd and Thompson ("CC-1"). CC-1 then distributed the money to Wedd, Thompson, and another co-conspirator by wire transfers to shell corporations under their control.

2

# DISCUSSION

## I. [MIL 1] THE DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF OTHERWISE LAWFUL CONDUCT AND ARGUING THAT IT IS PROBATIVE OF INNOCENCE

In his letter dated February 8, 2017 (the "February 8 Letter"), counsel for Wedd advised that the defendant may call "witnesses with experience in the [Premium Short Messaging Service] industry to testify regarding other industry developments which are necessary to place the conduct of Mr. Wedd in context." February 8 Letter at 2. To the extent the defense intends to offer evidence of otherwise lawful conduct that the defendants were engaged in around the time of the charged conspiracy, and contend that it is probative of their innocence, the Government respectfully requests that such evidence be precluded.

### A. Applicable Law

Generally, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States* v. *Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990). "Evidence of a defendant's past 'good acts' is only relevant where 'a defendant is alleged to have always or continually committed bad acts or where the evidence of good acts would undermine the underlying theory of a criminal prosecution." *United States* v. *Balboa*, No. 12 Cr. 196 (PAC), 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (quoting *United States v. Damti,* 109 Fed. App'x 454, 455–56 (2d Cir. 2004)).

In *Scarpa*, for example, the defendants were charged with various racketeering offenses. *Id.* at 997-98. The Government alleged that the defendants frequently congregated with each other at a location known as the "Wimpy Boys Social Club." *Id.* at 1010. During the prosecution, the Government learned that state law enforcement authorities had installed an eavesdropping device in the Social Club for a period of time but had intercepted only

3

"innocuous" conversations by the defendants or conversations relating to other uncharged criminal conduct. *Id.* The defense sought to obtain these "innocuous" tapes from the Government in order to introduce them into evidence, arguing that "the very innocuousness of the [defendants'] statements renders them relevant as they are probative of the defendants' innocence." *Id.*

The Second Circuit affirmed the district court's decision to exclude evidence, "by way or testimony or stipulation, of the existence of the bug and the absence of relevant intercepted conversations by the defendants." *Id.* at 1011. The Second Circuit quoted the district court's statement that defendants in criminal cases "cannot hope to use a process of elimination to defend themselves by presenting evidence of their noncriminal activities." *Id.* "[P]roof of the absence of criminal acts on specific occasions" is inadmissible. *Id.*; *accord United States* v. *Gotti*, 784 F. Supp. 1013, 1011 (E.D.N.Y. 1992) ("[A] defendant cannot establish that he did not commit a crime as to A because he did not commit a crime as to B.").[1]

More recently, in *United States* v. *Al Kassar*, 660 F.3d 108 (2d Cir. 2011), the Second Circuit affirmed the district court's exclusion of classified similar "prior good act" evidence under Federal Rule of Evidence 404, which restricts the use of character evidence. In *Kassar*, defendants were convicted of various offenses stemming from a scheme to supply a foreign terrorist organization with surface-to-air missiles. At trial, the district court rejected the defendants' attempt to offer classified evidence regarding their contacts with Spanish

---

[1] *See also United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (rejecting defense argument that "evidence of innocent travel [to Jamaica] was necessary to rebut the government's allegation that [the defendant] had been involved in other cocaine importations from Jamaica"); *United States* v. *Walker*, 191 F.3d 326, 336 (2d Cir. 1999) (affirming, in case involving fraudulent asylum applications, exclusion of evidence that defendant had "prepared other, non-fraudulent applications" because evidence "was simply irrelevant to whether the applications charged as false statements were fraudulent").

4

intelligence officials, through which the defendants sought to show they lacked the intent to join the scheme at issue. 660 F.3d at 122-23. The Second Circuit affirmed the exclusion of the evidence, concluding, among other things, that the evidence was "prior act evidence used to 'prove the character of a person in order to show action in conformity therewith,'" and therefore, not admissible. *Id.* at 123 (quoting Fed. R. Evid. 404(a)).

**B. Discussion**

The Government intends to offer evidence regarding how Mobile Messenger and Tatto operated, including otherwise lawful conduct, in order to accurately explain to the jury the relationships among the defendants and their relationships with other co-conspirators and participants in the mobile phone industry.

Wedd, in the February 8 Letter, indicated his intent to call "witnesses with experience in the [Premium Short Messaging Service] industry to testify regarding other industry developments which are necessary to place the conduct of Mr. Wedd in context." February 8 Letter at 2. Counsel for Wedd has declined to provide substantially more information, but to the extent the defendants seek to introduce evidence of otherwise lawful activities they were engaged in during the relevant time period, in order to argue that such evidence is indicative of their innocence, such evidence would be inadmissible under the principles outlined in *Scarpa* and *Kassar*. The Government has not alleged that the defendants engaged in a pattern of "ceaseless" criminal conduct but instead that, during the charged conspiracy period, they engaged in a scheme to auto-subscribe mobile phone customers and then launder the proceeds. As such, like the evidence of the "innocuous" conversations at the social club in *Scarpa*, evidence suggesting that the defendants engaged in legal conduct in their professional lives is not exculpatory, and it is therefore irrelevant. Similarly, the evidence would also be inadmissible

5

under Rule 404(a), because the defendant would be seeking to use his supposed prior good acts to argue that because he did not engage in criminal conduct in those areas, he did not engage in the activity charged in the Indictment. *Kassar*, 660 F.3d at 122-23. Accordingly, any argument that the defendants' engagement in otherwise lawful conduct is indicative of innocence should be precluded, and evidence of such conduct—other than background evidence required to explain the relationship among the defendants and co-conspirators, and the basis for their actions—is not admissible because it is irrelevant, prohibited character evidence.

II.  **[MIL 2] THIRD-PARTY WITNESS TESTIMONY REGARDING THE PURPOSES BEHIND MONEY TRANSFERS IS IMPROPER AND SHOULD BE PRECLUDED**

The February 8 Letter suggests that Wedd may seek introduce testimony from a forensic accountant that an analysis of bank records and other documents "fails to conform to the Government's contentions [regarding money laundering]." To the extent the defendants seek to introduce testimony characterizing money transfers or the purposes behind such transfers, the Government respectfully submits that such testimony should be precluded as improper opinion testimony that intrudes on the province of the jury.

As an initial matter, testimony offering opinions about the nature of purpose of money transfers from a forensic accountant appears to be within the heartland of expert testimony pursuant to Federal Rule of Evidence 702—it involves "technical, or other specialized knowledge" offered to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Defense counsel has not provided notice of any such testimony as required by the Federal Rules of Criminal Procedure.[2]

---

[2] To the extent that testimony from a forensic accountant—who did not participate in the charged conspiracy and was not involved in setting up the network of shell companies through which the payments passed—regarding the purpose

Moreover, such testimony would improperly invade the province of the jury, as it would offer an opinion on one of the elements of the charged money laundering conspiracy. One of the elements of the money laundering count in the Indictment, as set forth in *Modern Federal Jury Instructions*, is whether "the defendant[s] knew that the transaction was designed in whole or in part either to conceal or disguise the nature, location, source, ownership or control of the proceeds of specified unlawful activity." Sand, Modern Federal Jury Instructions, Instr. 50A.02. Testimony from a forensic accountant regarding the purpose behind money transfers would be improperly speculative and would intrude on the province of the jury to determine this issue. *Cf. United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988) ("The credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that these motions *in limine* should be granted.

Dated:    New York, New York
          February 15, 2017

                                                  Respectfully submitted,

                                                  PREET BHARARA
                                                  United States Attorney
                                                  Southern District of New York

                              By:     /s/_____
                                                  Richard Cooper/Sarah Paul
                                                  Assistant United States Attorneys
                                                  (212) 637-1027/2326

---

for such payments is based on discussions between the accountant and the defendants, such testimony would constitute inadmissible hearsay.