

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 16, 2017

**BY ECF**
The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

>        Re:    <u>United States</u> v. <u>Darcy Wedd, et al.</u>,
>               **15 Cr. 616 (KBF)**

Dear Judge Forrest:

The Government writes in advance of trial in this case to raise an issue related to expected testimony from a cooperating witness ("CW-1"). CW-1 is a former executive of Tatto. As set forth below, the Government expects to elicit limited testimony from CW-1 regarding instances when certain members of the charged conspiracy procured prostitutes and/or illegal drugs for other members of the charged conspiracy and their business associates. Such evidence is admissible as direct evidence of the charged conspiracy.

**Relevant Facts**

As relevant to this letter:

- CW-1 is a former Tatto executive who will describe, among other things, how CW-1 worked with defendant Jason Lee ("Lee"), a computer programmer at Tatto, on Tatto's auto-subscription scheme. CW-1 is expected to testify that Lee provided technical assistance with Tatto's auto-subscription scheme, and as partial payment for Lee's role in the scheme, CW-1 paid for Lee to fly to Singapore and in Singapore, CW-1 paid for a prostitute for Lee.

- CW-1 is also expected to describe, among other things, how CW-1 viewed defendant Darcy Wedd ("Wedd"), who was a senior executive at Mobile Messenger, as a mentor. CW-1 engaged in auto-subscribing with the assistance, at various times in or about 2011 and 2012, of Wedd and others. CW-1 is expected to testify, among other things, that in approximately 2007 or 2008, CW-1 received illegal drugs from a Mobile Messenger employee (the "Employee"), who told CW-1 that Wedd paid for the drugs. In or about the same time period,

the Employee also provided a prostitute to CW-1, and told CW-1 that Wedd paid for the prostitute.

**Applicable Law**

Rule 404(b) of the Federal Rules of Evidence prohibits admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) (emphasis added). But Rule 404(b) "has no bearing on the admissibility of acts that are part of the charged crime." *United States* v. *Quinones*, 511 F.3d 289, 308 (2d Cir. 2007). Rather, as the Second Circuit has repeatedly explained, "An act that is alleged to have been done in furtherance of [an] alleged conspiracy . . . is not an 'other act' within the meaning of Rule 404(b); rather, it is part of the very act charged." *United States* v. *Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992); *see also, e.g.*, *Quinones*, 511 F.3d at 308 (same); *United States* v. *Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (same); *United States* v. *Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (same); *United States* v. *Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (same).

Moreover, even where an act is not done in furtherance of a charged conspiracy, and is therefore an uncharged act, it is "well established" that proof of such an act is still admissible as direct evidence of the crimes charged and "is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (internal quotation marks and alterations omitted); *see also, e.g.*, *United States* v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (same); *United States* v. *Hsu*, 669 F.3d 112, 118 (2d Cir. 2012) (same). Even acts committed prior to the time period of the charged conspiracy can be admitted as direct evidence in order to prove the background and history of the alleged conspiracy. *See United States* v. *Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988); *see also United States* v. *Langford*, 990 F.2d 65, 70 (2d Cir. 1993) ("It is within the court's discretion to admit evidence of acts committed prior to the time charged in the indictment to prove the existence of the alleged conspiracy as well as to show its background and history.").

Where a crime or other type of wrongful act does not fall into either of the categories above—namely, an act in furtherance of a charged conspiracy, or an uncharged act that is nonetheless direct evidence of the conspiracy—Rule 404(b) still allows proof of that crime or act to be offered for purposes other than proving propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). This Court "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." *United States* v. *LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004); *see also United States* v. *Curley*, 639 F.3d 50, 56 (2d Cir. 2011); *United States* v. *McCallum*, 584 F.3d 471, 474-75 (2d Cir. 2009). To determine whether a district court properly admitted other act evidence, this Court considers "whether (1) it was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." *LaFlam*, 369 F.3d at 156; *accord Curley*, 639 F.3d at 56-57.

## Discussion

The Government respectfully submits that the testimony set forth above is admissible both as direct evidence of the charged conspiracy and for proper purposes pursuant to Rule 404(b).

First, CW-1 paying for a prostitute for Lee was an act in furtherance of the charged conspiracy. The Government expects CW-1 to testify that this was one of the ways that CW-1 compensated Lee for Lee's assistance with some of the technical aspects of auto-subscription. Accordingly, it is not an "other act" within the meaning of Rule 404(b), but rather is part and parcel with the other conspiratorial acts engaged in by CW-1 and Lee.

Second, CW-1's receipt of drugs and prostitutes that he believed to have been paid for by Wedd explains the background of their relationship of trust, and provides context for why CW-1 viewed Wedd as a mentor. Indeed, CW-1 is expected to testify that these events, in part, led CW-1 to feel sufficiently comfortable with Wedd to later broach the topic of auto-subscribing. The defendants will undoubtedly accuse the cooperating witnesses of lying and deception, and will dispute the existence of the conspiracy in this case. Unless the closeness of the relationship and the trust among the members of the enterprise is explained to the jury, the jury will be left to believe (and the defense left to argue) that no one would freely discuss criminal conduct with each other, as CW-1 will testify he did with Wedd. Absent testimony about how that "relationship of trust" developed, the jury will be asked, in essence, to accept CW-1's conclusory characterization of that relationship on blind faith. Without evidence of how close CW-1 felt to Wedd, it is hard to explain how CW-1 would feel comfortable enough to approach Wedd and ask for his assistance with auto-subscribing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      /s/ Richard Cooper
         Sarah E. Paul/Richard Cooper/
         Jennifer L. Beidel
         Assistant United States Attorneys
         (212) 637-2326/1027/2212

cc:     All defense counsel (by ECF)