

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 12, 2017

**BY ECF**
The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    **United States v. Darcy Wedd,**
              **S3 15 Cr. 616 (KBF)**

Dear Judge Forrest:

       The Government writes to further support its request that the Court give a conscious avoidance instruction with respect to all charged counts. For the reasons set forth in *United States v. Reyes*, 302 F.3d 48 (2d Cir. 2002) and *United States v. Svoboda*, 347 F.3d 471 (2d Cir. 2003), among others, a conscious avoidance instruction is appropriate to establish that the defendant consciously avoided learning the criminal objective of the autosubscribing conspiracies in which he participated.

    **A. Legal Principles of Conscious Avoidance**

       A conscious avoidance charge is properly given where the defendant has asserted "the lack of some specific aspect of knowledge required for conviction" and there is "an appropriate factual predicate for the charge, i.e., the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Fofanah*, 765 F.3d 141, 144 (2d Cir. 2014) (per curiam) (internal quotation marks and ellipsis omitted), *cert. denied*, 135 S. Ct. 1449 (2015); *accord, e.g.*, *United States v. Cuti*, 720 F.3d 453, 463 (2d Cir. 2013). Such an instruction is appropriate because "in addition to actual knowledge, a defendant can also be said to know a fact if he 'is aware of a high probability of its existence, unless he actually believes that it does not exist.'" *United States v. Reyes*, 302 F.3d 48, 54 (2d Cir. 2002) (quoting *Leary v. United States*, 395 U.S. 6, 46 n.93 (1969)).

       With respect to conspiracy charges, "the jury may use the conscious avoidance doctrine to establish the defendant's knowledge of the aims of the conspiracy but . . . may *not* use it to establish the defendant's intent to participate in the conspiracy." *United States v. Reyes*, 302 F.3d at 55. As a result, in single-object conspiracy cases, the Second Circuit has repeatedly held that a conscious avoidance instruction is entirely appropriate where a defendant knowingly and intentionally participated in the joint undertaking charged, but denies knowledge of the criminal objective of that joint undertaking. *See Reyes*, 302 F.3d at 55 (holding, in a single-object conspiracy case, that "the jury may use the conscious avoidance doctrine to establish the

defendant's knowledge of the aims of the conspiracy"); *United States* v. *Heinemann*, 801 F.2d 86, 94 (2d Cir. 1986) (holding, in a single-object conspiracy case, that "[a] conscious avoidance charge is appropriate where a defendant asserts ignorance of the specific objectives alleged in the indictment" (internal quotation marks omitted)); *see also United States* v. *Kozeny*, 667 F.3d 122, 134 (2d Cir. 2011) (emphasizing that conscious avoidance instruction proper where "a defendant's involvement in the criminal offense" was "so overwhelmingly suspicious that the defendant's failure to question the suspicious circumstances establishes the defendant's purposeful contrivance to avoid guilty knowledge" (internal quotation marks omitted)); *United States* v. *Svoboda*, 347 F.3d 471, 478-479 (2d Cir. 2003) (affirming use of instruction in a two-person conspiracy because "*Reyes* stands for the proposition that the conscious avoidance doctrine may be invoked to satisfy the requirement that a defendant know of the unlawful aims of the conspiracy").

Even where erroneously given, a "conscious avoidance instruction constitutes harmless error if the jury was charged on actual knowledge and there was overwhelming evidence to support a finding that the defendant instead possessed *actual* knowledge of the fact at issue." *United States* v. *Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000) (internal quotation marks omitted); *accord United States* v. *Fofanah*, 765 F.3d at 143.

### B. Conscious Avoidance Can Be Used To Prove The Criminal Nature of a Joint Undertaking.

Here, Wedd does not dispute that he entered into joint undertakings with Tatto or with Zhenya. Wedd admits that he assisted Lin Miao and Tatto in a joint undertaking to move their short codes from the full service platform to the aggregation platform at Mobile Messenger for the purpose of subscribing customers to premium short messaging services. And, Wedd admits that he, Erdolo Eromo, Fraser Thompson, and Michael Paj entered into a joint undertaking with Zhenya to get Zhenya up and running on the aggregation platform at Mobile Messenger as CF Enterprises and DigiMobi so that Zhenya too could subscribe consumers. What Wedd disputes is that he knew that these joint undertakings had the criminal objective of autosubscribing.

The Second Circuit's decision in *Reyes* compels the conclusion that a conscious avoidance instruction is appropriate here. Reyes worked as a manager of a used-car lot and was charged with participating in a single-object conspiracy to transport stolen automobile airbags in interstate commerce. 302 F.3d at 49-50. Reyes did not dispute that such a conspiracy existed, but only whether the Government had proven that he had knowingly engaged in that conspiracy with intent to violate the law. *Id.* at 53.

The Court turned first to whether Reyes had intentionally participated in the conspiracy. *Id.* at 55. Finding that he had, the Court cited evidence that Reyes had (1) referred buyers and sellers of secondhand airbags to a co-conspirator and providing translation services; (2) once "dropped off a set of undocumented airbags . . . in a plain plastic bag, which was the manner that thieves would deliver stolen airbags"; and (3) "earned approximately $17,000 from a business that consisted mostly of stolen airbag sales." *Id.* Based on that evidence, "a reasonable jury could infer that [Reyes] intentionally participated in stolen airbag transactions that were part of [a co-conspirator]'s illegitimate activities." *Id.* The Court next turned to whether Reyes knew the airbags were stolen, concluding that the evidence "would have permitted a reasonable jury to conclude that Reyes either knew the airbags were stolen or consciously avoided confirming that fact." *Id.*

As in *Reyes*, there is no dispute that Wedd entered into joint undertakings with Tatto and Zhenya. What is in dispute is Wedd's knowledge of the fact that those joint undertakings were engaged in autosubscribing. On these facts, a conscious avoidance instruction is appropriate, if factually supported as discussed in the next section.

### C. Wedd Was Aware of a High Probability of Autosubscribing and Deliberately Avoided Confirming It.

At the same time, Wedd was aware of a high probability that both Tatto and Zhenya were, in fact, autosubscribing. As to Tatto, Wedd knew that he and three of his co-workers were autosubscribed by Tatto, ordered an audit of Tatto's short code, saw that the results of that audit contained "negative highlights," and ordered a pause of Tatto's short codes, all before Lin Miao himself told Wedd that Tatto was autosubscribing. Thereafter, the signs that Tatto was autosubscribing continued – they asked for all of their short codes to be moved to the aggregation platform in an expedited fashion, Wedd continued to receive unsolicited messages on his own phone, Tatto bought Wedd a fancy watch, and Tatto autosubscribed a Verizon Wireless employee. As to Zhenya, Wedd knew that he was a bad actor who had autosubscribed auditors and in 2009 needed to be moved to the full-service platform where he could no longer autosubscribe. Thereafter, Zhenya hid the ownership of his short codes through layers of companies and through nominee individuals, and Zhenya paid Wedd, Eromo, Paj, and Thompson for their assistance with these new businesses "off the books" of Mobile Messenger, all before Zhenya was again permitted to operate on the aggregation platform. Moreover, as a general matter, Wedd confirmed that he was generally aware of the risks of autosubscribing that existed on the aggregation platform, as evidenced by his push for Aggregator Consent Management which did not come with those risks.

Wedd, in his role as COO and CEO of Mobile Messenger, also deliberately avoided confirming that Tatto and Zhenya were autosubscribing. Wedd put Paj in charge of monitoring Tatto, when he knew that Paj had engaged in improper practices in the past. Wedd also contends that he shifted his focus away from Mobile Messenger and towards other businesses like Payvia. At the same time, there is no evidence that Wedd ordered audits of Tatto or Zhenya's short codes after they began autosubscribing, even though he clearly had the power to do so. Wedd did not look at Mobile Messenger's message logs to see whether they would indicate autosubscribing. Wedd did not ask Tatto the source of the money they used to buy him an expensive watch or why they did so. Wedd did not ask Eromo or Paj for accountings of the money coming in to Phwoar and Mojiva from Zhenya or Tatto or the sources of that money. Wedd did not ask Paj whether Tatto ever, in fact, reached out to him about autosubscribing as they had supposedly suggested during the October 2011 meeting. Instead, Wedd simply sat back and watched the money roll in.

Because Wedd was aware of a high probability of autosubscribing and because he deliberately avoided confirming that fact, a conscious avoidance instruction is appropriate.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:   /s/ Jennifer L. Beidel
Sarah E. Paul/Richard Cooper/
Jennifer L. Beidel
Assistant United States Attorneys
(212) 637-2326/1027/2212

cc: Maurice Sercarz, Esq. (by ECF)