*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 11, 2018

**BY ECF**
The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Darcy Wedd*, 15 Cr. 616 (KBF)

Dear Judge Forrest:

      The Government writes in response to the Court's Order dated April 9, 2018. (Doc. 684). That Order directed the Government to respond to the defendant's letter dated April 6, 2018 (Doc. 683), in which the defendant argues that he was not paid for his involvement in the Tatto scheme and that the forfeiture amount should be limited to his compensation for the Zhenya scheme. The evidence at trial belies the defendant's contention.

      As the Government explained in its sentencing submission (Gov't Sub. at 4-5), the testimony of Michael Pajaczkowski ("Paj") and Lin Miao, and the bank records presented at trial, establish that Wedd was paid for his role in the Tatto scheme. Paj testified that he received over $1.5 million from Tatto. (*See* GX-1401). Paj also testified that, from the money he received, he gave between a 10 and 20% cut to Wedd, which would have been between $150,000 and $300,000. Paj further testified that he made the payments to Wedd initially in cash and later by wire. (*See, e.g.,* Tr. at 247, 255, 258, 261). Miao and Paj also testified that Wedd received a $10,000 Rolex watch for allowing Tatto to auto-subscribe at Mobile Messenger. (*See, e.g.,* Tr. at 217, 224-25, 783). The bank records presented at trial corroborate this testimony. Government Exhibit 1410 compares wire transfers to Fraser Thompson with wire transfers to Wedd. Because Thompson was not part of the Tatto scheme, the difference in payments to Thompson and Wedd reflects Wedd's compensation for the Tatto scheme. The total difference in payments is $190,468.49, which falls squarely within the 10 to 20% range about which Paj testified. (*See* GX 1410).

      The jury's verdict, finding Wedd guilty on all Tatto counts including the money laundering conspiracy, reflects that the jury relied on this evidence and found it credible. The evidence established that Wedd was paid for his role in the Tatto scheme and attempted to hide those payments by receiving them in cash and by hiding them in wire transfers to and from shell companies. The Court should include the amount that Wedd received from Tatto within the forfeiture calculation. Conservatively, the Government estimates that amount to be only the

$190,468.49 that appears in the wire transfers, and not the cash payments or Rolex watch that the testimony establishes Wedd also received. As a result, in the Government's view, the appropriate forfeiture amount is $1,742,583, which is comprised of $1,552,114.56 from the Zhenya scheme and $190,468.49 from the Tatto scheme.

Aside from the parties' difference of view regarding the appropriate dollar amount of forfeiture, the parties are near agreement as to the language of the proposed forfeiture order. The current version of that order, using the dollar amount that the Government proposes, is attached as Exhibit A.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

/s/ Jennifer L. Beidel
Sarah E. Paul/Richard Cooper/
Jennifer L. Beidel
Assistant United States Attorneys
(212) 637-2326/1027/2212

cc: Maurice Sercarz, Esq.
    Counsel for Darcy Wedd